```
         IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF KANSAS
```

**RAYMOND MASON,**

                  **Plaintiff,**

        v.                        CASE NO. 06-3333-SAC

**L.E. BRUCE, et al.,**

                  **Defendants.**

### O R D E R

This civil rights complaint, 42 U.S.C. 1983, was filed by an inmate of the Hutchinson Correctional Facility, Hutchinson, Kansas (HCF). As the basis for his complaint, Mr. Mason alleges that defendant Dr. Song mis-diagnosed his skin condition and treated him with the wrong medication, including one containing sulfur to which he is allergic. He also alleges Dr. Song disclosed his medical records and condition to an HCF correctional officer without his consent, who then revealed the information to some other inmates. Mr. Mason seeks declaratory, injunctive, and monetary relief based upon his claims that defendants violated the "patient confidentiality rule," denied him medical treatment, and committed malpractice. Plaintiff also claims that his due process, equal protection, and Eighth Amendment rights have been violated.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

Upon screening pursuant to 28 U.S.C. 1915A(a) and (b), this

court issued a Memorandum and Order on December 22, 2006, finding the complaint subject to being dismissed for failure to adequately plead exhaustion of administrative remedies on all claims. Prisoners are required by statute to exhaust prison grievance procedures before filing suit. See 42 U.S.C. § 1997e(a); Jones v. Bock, 127 S.Ct 910, 2007 WL 135890, at *3-4 (Jan. 22, 2007). The prior order was entered at a time when courts within this Circuit held that exhaustion was a pleading requirement with the burden of showing total exhaustion falling upon the prisoner. See e.g., Steele v. Fed. Bureau of Prisons, 355 F.3d 1204, 1209 (10th Cir. 2003)(abrogated by Jones). However, since entry of the court's prior order, the Supreme Court in Jones held that exhaustion is an affirmative defense the defendant must plead and prove, and that failure to exhaust some claims does not necessarily result in dismissal. See Jones, 2007 WL 135890, at *11 (Jan. 22, 2007). In accord with Jones, this court will not dismiss this action based upon failure to exhaust or lack of total exhaustion.

**APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FEES**

Plaintiff has filed An Application to Proceed Without Prepayment of Fees[1] (Doc. 2), and has attached an Inmate Account Statement in support as statutorily mandated. Section 1915(b)(1)

---

[1] Before Jones was decided, this court delayed imposition of a filing fee until it determined the case would not be dismissed for failure to exhaust administrative remedies prior to filing. The prisoner was thus saved from having to pay the filing fee when it was clear his or her action could not proceed beyond screening, but might be re-filed after exhaustion with another fee imposed for essentially the same action. That course is no longer available.

of 28 U.S.C., requires the court to assess an initial partial filing fee of twenty percent of the greater of the average monthly deposits or average monthly balance in the prisoner's account for the six months immediately preceding the date of filing of a civil action.  Having examined the records of plaintiff's account, the court finds the average monthly deposit was $31.45 and the average monthly balance was $18.31.  The court therefore assesses an initial partial filing fee of $6.00, twenty percent of the average monthly deposit, rounded to the lower half dollar[2].  Plaintiff must submit this partial filing fee before this action may proceed.  If he does not submit the partial fee within the time provided, this action may be dismissed without further notice.

**SCREENING**

As noted, the court initially thought this complaint was subject to being dismissed for failure to exhaustion administrative remedies, but it may no longer be dismissed upon screening on the basis of that affirmative defense.  However, there are other deficiencies in the complaint discerned upon screening, which render it subject to being dismissed.  Plaintiff will be given time to cure these deficiencies.

Plaintiff has filed a Motion to Amend Complaint (Doc. 8),

---

[2] Pursuant to 28 U.S.C. §1915(b)(1), plaintiff remains obligated to pay the full $350 district court filing fee in this civil action.  Being granted leave to proceed in forma pauperis entitles him to pay the filing fee over time through payments deducted automatically from his inmate trust fund account as authorized by 28 U.S.C. §1915(b)(2).

which was unnecessary since no responsive pleading had been filed. That motion is granted. His Amended Complaint has already been filed and completely supercedes his original complaint. The court has considered plaintiff's Response, his Supplement to Response, and his Amended Complaint together with other materials filed, and finds as follows.

The court is required to liberally construe plaintiff's pro se complaint. However, that does not relieve Mr. Mason of the burden of alleging sufficient facts on which a recognized legal claim may be based. See Bell Atlantic Corp. V. Twombly, 127 S.Ct. 1955, *1965-66 (May 21, 2007). Not every fact must be described in specific detail, and the plaintiff whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to him, should be allowed to amend his complaint, Reynoldson v. Shillinger, 907 F.2d 124, 126-27 (10th Cir. 1990). Nevertheless, conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991); Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989), cert. denied, 493 U.S. 1059 (1990).

**PERSONAL PARTICIPATION OF DEFENDANTS REQUIRED**

Plaintiff names several defendants, but the only named defendant alleged to have personally participated in any of the actions he claims violated his constitutional rights is Dr. Song. Mr. Mason alleges he went to sick call on August 13, 2006, with a

4

"skin eruption" which was wrongfully diagnosed as shingles by either Dr. Song, defendant Myers, or Correct Care Solutions[3]. He further alleges that Dr. Song "was the doctor to see and treat" him for shingles, but also alleges Dr. Song incorrectly diagnosed his condition as "poison oak" and treated him with the wrong medication. Plaintiff does not describe any acts taken by Warden Bruce, defendant Janet Myers, Correct Care Solutions, or any unnamed John or Jane Does.

Section 1983 imposes liability for conduct which causes the complainant to be subjected to a deprivation of a right secured by the Constitution or laws of the United States. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970); Rizzo v. Goode, 423 U.S. 362, 370-71 (1976). In order to establish a cognizable claim under 42 U.S.C. § 1983, a plaintiff must not only demonstrate that defendants, acting under color of state law, deprived him of a federally protected right but must also prove that the named defendants were personally involved in the deprivation. Thus, a supervisor may be found liable under § 1983 only on the basis of his or her own acts or omissions. A supervisor's liability may not be predicated solely upon a theory of respondeat superior. McKay v. Hammock, 730 F.2d 1367, 1374 (10th Cir. 1984)(A supervisor cannot be held liable in either an official or individual capacity in the absence of some affirmative link between the alleged

---

[3] Correct Care Solutions is not a "person" amenable to suit under 42 U.S.C. 1983. Plaintiff plainly alleges that Dr. Song mis-diagnosed his condition, and describes no actions, dates, or events involving defendant Myers.

constitutional violation and the supervisor's exercise of control or a failure to supervise.), *citing* Rizzo, 423 U.S. 362, 371 (1976); Gagan v. Norton, 35 F.3d 1473, 1476 FN4 (10th Cir. 1994).

In the instant case, plaintiff does not describe any acts by defendants other than Dr. Song. Instead, he implies Warden Bruce and Correct Care Solutions are liable because of their supervisory capacity. He generally alludes to the promulgation of policies and procedures by defendants, but does not hint at the content of any relevant policy or explain how it led to his injuries. His claims of acquiescence are completely conclusory. Plaintiff will be given time to describe the unconstitutional acts or inactions of defendants other than Dr. Song. If he fails to allege additional facts showing personal participation by any defendant, this action will be dismissed as against that defendant.

**DENIAL OF MEDICAL CARE CLAIM**

As noted, to recover under 42 U.S.C. 1983, plaintiff must show a deprivation of rights secured by the Constitution and laws of the United States. Rizzo, 423 U.S. at 370-71. Plaintiff claims his right to adequate medical care under the Eighth and Fourteenth Amendments has been violated. However, he does not allege sufficient facts to elevate his claim of medical malpractice to one of cruel and unusual punishment. The United States Supreme Court has held that an inmate advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs."

Estelle v. Gamble, 429 U.S. 97, 106 (1976).  The "deliberate indifference" standard has two components: "an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that [prison] officials act with a sufficiently culpable state of mind." Miller v. Glanz, 948 F.2d 1562, 1569 (10th Cir. 1991).

With respect to the subjective component, a prison official does not act in a deliberately indifferent manner unless that official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).  It follows that an inadvertent failure to provide adequate medical care or a negligent diagnosis "fail[s] to establish the requisite culpable state of mind."  Id., *quoting* Wilson v. Seiter, 501 U.S. 294, 297 (1991).  As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medial mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.

Estelle, 429 U.S. at 105-106 (footnote omitted).

Plaintiff does not allege facts indicating a "serious medical need."  He alleges he sought medical attention for a "skin

7

eruption" on his arm, but does not describe this ailment further[4]. He complains that this condition was mis-diagnosed, but does not disclose the proper diagnosis or treatment of his skin condition. A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980); Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999); Martinez v. Garden, 430 F.3d 1302, 1304 (10th Cir. 2005), *quoting* Farmer, 511 U.S. at 834 ("The objective component is met if the deprivation is 'sufficiently serious.'"). Plaintiff states elsewhere in his complaint that he was diagnosed as HIV positive in 1996, but does not allege that the skin eruption he presented with at HCF in 2006 was a serious manifestation of his HIV.

Nor does plaintiff allege facts indicating that defendant Song, or any other defendant, acted with a sufficiently culpable state of mind. He does not allege that Dr. Song was aware of a substantial risk to him from the skin eruption, but disregarded that risk. He alleges only that Dr. Song initially failed to

---

[4] Plaintiff's exhibit attached to Doc. 6 is a copy of a Petition for Writ of Habeas Corpus he filed under K.S.A. 60-1501 in the District Court of Reno County, Kansas. Mr. Mason states that he attempted to raise his claims in that state court action. In his 1501 Petition, he alleged that he "caught something working at the fairgrounds" on August 16, 2006; went to sick call on August 17; and Dr. Song told him it was poison oak and treated him. He then alleged his condition worsened, and he returned to the doctor on August 23. He was then told he would have to "go to the Central Unit because (he) had to be isolated from other inmates," and that his condition had worsened because he "was H.I.V." and "was not on any meds." He further stated that he had received threats from inmates and "had to check into P.C. because the South Unit did not want to take (him) back, and that is when Jerri Wills, the classification administrator made them take him back."

correctly diagnose and therefore did not provide the correct treatment. An initial failure to properly diagnose may be attributable to no more than an error in judgment. Errors in medical judgment are, at most, the basis for a claim of negligence in state court; not a federal constitutional claim of cruel and unusual punishment. Plaintiff's claim that Dr. Song erroneously gave him medication containing sulfur includes the allegation that his medical records contained the information that he is allergic to sulfur. Again, these allegations amount to a claim of negligence without facts indicating a culpable state of mind on the part of Dr. Song.

Plaintiff's allegations that Dr. Song's actions or inactions caused a significant drop in his "CD-4 count," or "immune system protection level," are followed with the statement that Dr. Song's "successor or another doctor" had to readjust his medications to counteract Dr. Song's mistakes. These statements suggest that, rather than being denied medical treatment, Mr. Mason received medical treatment at HCF. Plaintiff does not allege how long his count was adversely affected, and again fails to allege a sufficiently culpable state of mind on the part of defendant Song. In sum, no facts are alleged indicating Dr. Song's actions were anything more than negligence.

**STATE LAW CLAIMS**

Plaintiff cites numerous state statutes governing limitations of actions, declaratory relief, quo warranto, madamus,

and injunctions in the Kansas state courts, and asserts this court has "supplemental jurisdiction" over his "state law tort claims." However, state statutes do not provide support for a cause of action under 42 U.S.C. 1983. Moreover, claims cognizable under state laws providing a remedy for torts or breach of contract do not amount to federal constitutional violations. Furthermore, unless plaintiff shows that his Section 1983 complaint should not be dismissed for the reasons stated herein, there can be no supplemental jurisdiction over any state law claims.

Plaintiff will be given time to allege facts indicating a serious medical need and that each defendant acted with a culpable state of mind. If he fails to cure these deficiencies in his complaint, this action may be dismissed without further notice for failure to allege facts in support of his claim.

**BREACH OF CONFIDENTIALITY CLAIM**

Plaintiff complains that during a follow-up visit, Dr. Song, without permission, blurted out that plaintiff is HIV positive in the presence of HCF Correctional Officer Wilson. He claims this violated "the patient-doctor confidentiality rule." These facts, taken as true, do not evince a federal constitutional violation. It is accepted by our society that "[l]oss of freedom of choice and privacy are inherent incidents of confinement." Hudson v. Palmer, 468 U.S. 517, 527-28 (1984), *quoting* Bell v. Wolfish, 441 U.S. 520, 537 (1979). Plaintiff as a prison inmate does not have a right to privacy in non-disclosure of his HIV

10

status, which outweighs the prison's interest[5] in making an extra effort to protect other inmates from HIV[6].  Dunn, 880 F.2d at 1195-96; Wolfish, 441 U.S. at 537.  While his claim that information regarding his HIV status was unnecessarily disclosed to non-medical personnel and other inmates is not frivolous, it does fails to state a claim under Dunn.  See Hunt v. Ortiz, 84 Fed.Appx. 34, (10th Cir. Dec. 17, 2003, unpublished),[7] cert. denied, 541 U.S. 1014 (2004).  Plaintiff does not suggest that information regarding his HIV status was used in any sort of criminal context.  Plaintiff also does not allege facts indicating Dr. Song had an improper motive in her limited disclosure concerning his medical condition. See Herring v. Kennan, 218 F.3d 1171, 1177 (10th Cir. 2000), cert. denied, 534 U.S. 840 (2001).

---

[5]

    The Tenth Circuit reasoned in Dunn:
The prison's interest in responding to the threat of AIDS, or any contagious disease occurring in prison, is obviously strong.  Indeed, in Glick v. Henderson, 855 F.2d 536 (8th Cir.1988), the Eighth Circuit suggested that in limited circumstances, a prison's failure to protect prisoners from fellow inmates carrying AIDS may violate the eighth amendment.  See also Lareau v. Manson, 507 F.Supp. 1177, 1194, 1195 n. 22 (D.Conn.1980) (failure to screen prisoners for communicable disease violates constitutional rights of other prisoners), aff'd in part, modified in part on other grounds, and remanded, 651 F.2d 96 (2d Cir.1981).

Dunn, 880 F.2d at 1195.  The court in Dunn concluded that in "light of the seriousness of the disease and its transmissibility," the prison has a substantial interest in pursuing a program to treat those infected with the disease and in taking steps to prevent further transmission."  Id. at 1196.

[6]

    Confidential medical information is entitled to constitutional privacy protection.  A.L.A. v. West Valley City, 26 F.3d 989 (10th Cir. 1994).  However, imprisonment is a circumstance which "permits a degree of impingement on privacy that would not be constitutional if applied to the public at large." See Griffin v. Wisconsin, 483 U.S. 868, 873-75 (1987).

[7]

    A copy of this unpublished opinion is attached hereto in accord with Tenth Circuit court rules.

11

In addition, Mr. Mason does not allege sufficient facts indicating personal injury arising from defendant Song's statement during a follow-up doctor visit. Instead, he complains that Wilson, who is not a defendant, ordered some inmates to bleach his linen and clothing and made a "derogatory and unauthorized revelation" about his medical condition to some inmates. He claims Wilson's comments resulted in his being ridiculed, harassed, and threatened by, as well as isolated from, other inmates; becoming a "target for discrimination;" being returned to maximum security; and having suffered serious emotional and psychological abuse[8]. However, these allegations are conclusions only, and do not include any facts regarding, for example, the duration of such conditions or which named defendant actually caused the conditions to occur.

**EQUAL PROTECTION AND DUE PROCESS CLAIMS**

Plaintiff does not allege any facts in support of his claim of denial of due process. If he is claiming that he was placed in segregation without due process, the administrative segregation of HIV-positive prisoners does not violate due process as long as such segregation is within the purview of the prisoner's original sentence. See Sandin v. Conner, 515 U.S. 472 (1995).

Likewise, plaintiff alleges no facts in support of his

---

[8] 42 U.S.C. 1997e(e) provides: "No Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury."

12

claim of denial of equal protection.  "The Equal Protection Clause of the Fourteenth Amendment commands that no States shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike."  <u>City of Cleburne v. Cleburne Living Center</u>, 473 U.S. 432, 439 (1985), *citing* <u>Plyler v. Doe</u>, 457 U.S. 202, 216 (1982).  Plaintiff does not state facts indicating he is being treated differently from similarly situated inmates.

Plaintiff shall be given time to supplement his complaint with additional facts in support of his claims which cure the deficiencies discussed herein.  If he fails to allege sufficient facts within the time provided, this action may be dismissed for failure to state facts in support of a federal constitutional claim, without further notice.

**MOTION FOR APPOINTMENT OF COUNSEL**

A pro se plaintiff in a civil rights action has no right to appointment of counsel.  Plaintiff appears capable of presenting the facts underlying his claims.  As a result, the court finds his Motion to Appoint Counsel (Doc. 3) should be denied, without prejudice, at this juncture.  Plaintiff may file a new motion to appoint counsel later in this case.

**IT IS THEREFORE ORDERED** that plaintiff is granted thirty (30) days in which to submit to the court an initial partial filing fee of $ 6.00.  Any objection to this order must be filed on or

before the date payment is due.  The failure to pay the fees as required herein may result in dismissal of this action without prejudice.

**IT IS FURTHER ORDERED** that within the same thirty (30) days plaintiff must show cause why this action should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Appoint Counsel (Doc. 3) is denied; and plaintiff's Motion to Amend Complaint (Doc. 8) is granted.

**IT IS SO ORDERED**.

Dated this 18th day of July, 2007, at Topeka, Kansas.

<u>s/Sam A. Crow</u>
U. S. Senior District Judge